IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANJAY GOSWAMI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-2953 |
| | § | |
| UNOCAL (NOW CHEVRON) | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Sanjay Goswami, proceeding *pro se*, sued Unocal, which was later acquired by Chevron Corporation (Chevron Corp.). Goswami worked for Unocal from October 1990 until he was laid off in November 1993. He was approved for long-term disability benefits under Unocal's long-term disability plan in 1995, retroactive to May 1994, and continued to receive these benefits until he retired in September 2011 at the age of 65. Goswami filed an EEOC charge in 2012, alleging that Unocal had discriminated against him based on disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.* In this lawsuit, also filed in 2012, he added allegations that Unocal had violated ERISA, 29 U.S.C. § 1001 *et seq.*, by depriving him of funds he was entitled to receive under the Unocal Profit Sharing Plan; that Unocal had violated Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), by discriminating against him on the basis of race and age; and that Unocal had violated the Genetic Information Non-Discrimination Act of 2008, Pub. L. No. 110–233, 122 Stat. 881 (codified in various sections of 29 U.S.C. and 42 U.S.C.) (GINA). His claims arise out of his assertion that Unocal wrongfully denied him money due under the Profit Sharing Plan when he was

laid off in 1993 and that Chevron denied him money due under the Plan when he retired in 2011, and that Chevron discriminatorily refused to hire him when he applied for a position with Chevron U.S.A. by preparing an online application in September 2011.

Chevron has moved for summary judgment on all of Goswami's claims. (Docket Entry No. 27). Goswami sought additional time to file a full response. This court allowed him additional time. He has now responded, (Docket Entries No. 29, 32, 34), Chevron has replied (Docket Entry No. 35), and Goswami has surreplied, (Docket Entry No. 38).

Based on the pleadings; the motion, responses, and reply; the summary judgment record; and the applicable law, this court grants Chevron's summary-judgment motion and by separate order enters final judgment. The reasons are explained below.

## I. The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect

the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**III. Analysis**

    **A. The Claims Arising from Unocal's Handling of the Profit Sharing Plan**

        **1. The Summary-Judgment Evidence**

Goswami worked for Unocal, acquired by Chevron Corp. in 2005, from October 16, 1990 until November 15, 1993. During his employment with Unocal, Goswami participated in the Unocal Profit Sharing Plan (Plan). Unocal asserts and provides summary judgment evidence showing that when Goswami was laid off in November 1993, he was not vested in Unocal's contributions to the Plan and was ineligible for a distribution of those contributions. (Docket Entry No. 27, Ex. 5 (March 4, 1994 letter to Goswami)). Goswami was eligible to receive a distribution of his contributions to

3

the Plan. Unocal notified Goswami of his distribution eligibility by a letter dated March 4, 1994 from Carl R. Brick, a Manager for Personnel Services at Unocal. Brick stated in the letter that Goswami needed to complete Unocal's Withdrawal Request Form included with the letter to receive the distribution of his Plan contributions. (*Id.*). In response, Goswami sent Brick a letter on March 8, 1994, stating that he disagreed with Unocal's position on vesting but enclosing the completed Withdrawal Request Form. (*Id.*, Ex. 7 (March 8, 1994 Letter); *id.* Ex. 8 (Form)). In Section B of the Form, headed "Immediate Distribution/Deferral Election," Goswami elected to make a "Final Withdrawal of all balances in my accounts." (*Id.*, Ex. 8 at p.1). In Section C, headed "One or Two-Step Distribution Election," Goswami elected to "withdraw all balances to which I am entitled only after final allocations are made to my accounts." (*Id.*). In Section D, headed "Direct Rollover Election," Goswami asked that "all cash and Unocal shares in my accounts be issued in my name (i.e., no Direct Rollover)." (*Id.* (emphasis in original)). Finally, in Section F, headed "Name and Addresses for the Distribution(s)," Goswami provided his home address in California where he wanted Unocal to send the distribution. (*Id.* at p.2).

In April 1994, Unocal distributed to Goswami his Plan contributions, following the instructions in Goswami's complete Form. Unocal distributed to Goswami 306 shares of Unocal common stock. No cash was distributed because none was due after taxes were subtracted. (*Id.*, Ex. 9 (Final Withdrawal Statement); *id.*, Ex. 10 (Unocal Stock Certificate); *id.*, Ex. 11 (Unocal Check); *id.*, Ex. 12 (February 3, 2012 letter to Goswami)). The handwritten notation on Goswami's Final Withdrawal Statement shows that Unocal made the distribution by hand. (*Id.*, Ex. 9 (Final Withdrawal Statement)). Goswami placed his initials next to this handwritten notation on the Final Withdrawal Statement. (*Id.*).

**2.     Discussion**

The summary-judgment evidence shows that in March 1994, Goswami requested a full withdrawal of all of his contributions to the Plan. Unocal processed this withdrawal request and in April 1994 distributed to Goswami all of his Plan contributions in which he was vested, comprising of Goswami's 306 shares of Unocal common stock and $154.21 in cash minus federal tax withholdings. (*Id.*). Goswami has not identified competent evidence controverting this proof of Unocal's Profit Sharing Plan distribution in April 1994. There is no evidence that Goswami is owed additional money under the Plan.

Goswami's claim that in 1993, Unocal wrongfully denied him money owed under the Plan also fails as a matter of law because it is time-barred. Chevron Corp. acknowledges that it does not have a copy of the Unocal Profit Sharing Plan or summary plan description, and therefore cannot identify whether Goswami's claim is an ERISA denial-of-benefits claim or a state-law breach of contract claim. But whether Goswami's claim arises in contract or under ERISA, Chevron correctly notes that the statute of limitations is four years. *See King v. Unum Life Ins. Co. of Am.*, 447 F. App'x 619, 624-25 (5th Cir. 2011); *St. Julian v. Trustees of the Agreement of Trust for Maritime Assoc.-I.L.A. Pension Plan*, 5 F. Supp. 2d 469, 472-73 (S.D. Tex. 1998); *see also Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992) (applying the Texas four-year-statute-of-limitations for contract claims to plaintiff's claim to enforce ERISA plan rights). Goswami's claim of a denial of benefits by Unocal or failure properly to distribute to his Plan contributions began to run in 1994, when Unocal made the decisions and provided Goswami notice. Unocal told Goswami, in writing in 1994, that he was vested in his contributions to the Plan, but not vested in the company contributions to the Plan. (Docket No. 27, Ex. 5 (March 4, 1994 Letter to Goswami)). Goswami

knew in 1994 that he was eligible only for a distribution of his Plan contributions. Goswami sent Unocal a letter on February 23, 1994 demanding that Unocal distribute any company contributions to the Plan. (*Id.*, Ex. 22; *id.*, Ex. 23 (February 23, 1994 Letter from Goswami)). In response, Brick sent Goswami the March 4, 1994 letter explaining that Goswami was vested only in his Plan contributions and that Unocal would distribute only his contributions. (*Id.*, Ex. 5). Goswami sent Unocal a second letter on March 8, 1994 stating that he did not agree with Unocal's position regarding the Plan contributions in which he was vested. (*Id.*, Ex. 7 (March 8, 1994 Letter from Goswami)). Goswami clearly knew in 1994 the facts giving rise to his claim against Unocal based on its conclusion that he was not vested in the company Plan contributions and not eligible to receive them in his Plan distribution.

Unocal also provided Goswami in April 1994 a Final Withdrawal Statement showing Goswami's Plan contributions and Unocal's distribution to Goswami in April 1994. (*Id.*, Ex. 9 (Final Withdrawal Statement)). Goswami initialed next to a handwritten notation on the Final Withdrawal Statement stating that Unocal distributed the Plan contributions to Goswami by hand. (*Id.*). Goswami knew in 1994 of his potential claim against Unocal over the amount of his final Plan distribution. Yet Goswami did not file this lawsuit until 2012, well beyond the four-year statute of limitations. Goswami's claim that Unocal wrongfully denied him benefits is time-barred as a matter of law.

  **B. The Claims Arising from Chevron's Handling of the Profit Sharing Plan**

    **1. The Summary-Judgment Evidence**

In November 1995, CIGNA approved Goswami for long-term disability benefits under Unocal's long-term disability plan. (*Id.*, Ex. 13 (February 6, 1996 Internal Memo). The benefits

were approved retroactive to May 1994. Goswami continued to receive long-term disability benefits until he turned 65 on September 30, 2011 and retired. (*Id.*, Ex. 12 (February 3, 2012 Letter to Goswami)).

Goswami asked Chevron Corp. on January 6, 2012 about the status of his benefits. Chevron Corp. responded with a letter dated February 3, 2012, telling Goswami that he was not eligible to participate in a 401(k) plan or the Unocal Profit Sharing Plan because Unocal had paid out Goswami's Plan contributions on April 20, 1994. (*Id.*).

### 2. Discussion

Chevron Corp. has submitted competent summary-judgment evidence showing that Goswami withdrew all of his contributions to the Unocal Profit Sharing Plan in April 1994, after he was laid off from Unocal in November 1993. At that point, Goswami received from Unocal all the amounts that he was owed under the Plan and ceased being a Plan participant. When Goswami retired in September 2011, he was not eligible to receive any benefits under the Plan. Chevron Corp. informed him in 2011 that Unocal had paid out his contributions in April 1994. Chevron Corp. did not deny Goswami any Plan benefits to which he was entitled to in 2011. Goswami's belief, however sincere, that he was discriminated against is insufficient, as a matter of law, to create a genuine fact dispute material to determining whether Chevron Corp. denied Goswami Plan benefits based on unlawful reasons. *See Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("This Court has cautioned that 'conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996))). Chevron Corp. is entitled to summary judgment on this claim.

7

### C. The Claims Arising from Chevron's Failure to Hire Goswami in 2011

#### 1. The Summary Judgment Evidence

Chevron has submitted competent and undisputed evidence about how on-line applications are processed and what steps Goswami followed in 2011. The evidence shows that to apply for employment positions with Chevron U.S.A., external job applicants must follow the company's job-application process. The first step is completing an online-candidate profile through the Chevron U.S.A.'s online Career Center, htttp://careers.chevron.com. (Docket Entry No. 27, Ex. 14). The candidate profile contains the applicant's personal information, employment history, and resume. Chevron U.S.A. creates a candidate-tracking summary for each individual in a database. (*Id*. at ¶6). An applicant then applies for open positions through Chevron U.S.A.'s online Career Center. The application is done by submitting the completed candidate profile to a specific position for which the candidate is qualified, meaning the candidate at a minimum meets the posted job requirements. (*Id*. at ¶5). Chevron U.S.A. does not consider a candidate for employment positions unless and until the candidate applies to specific posted positions, identified by job requisition numbers, through the Career Center website. (*Id*. at ¶¶3, 5, 7). If an individual sends a resume to Chevron U.S.A. by mail or email, the company will not consider it until the individual applies online to a posted position. (*Id*. at ¶8). When Chevron U.S.A. receives résumés by e-mail, it sends a response e-mail that the application must go through Chevron U.S.A.'s Career Center. (*Id*.). The e-mail additionally states that if the individual is interested in a position, the individual must complete a candidate profile and submit it to the positions of interest for which the individual is qualified. (*Id*.).

If an individual sends a general inquiry about employment to Chevron Corporate Human Resources Staffing Services through Chevron's website, Chevron U.S.A. sends an automatic e-mail

response with information about how to apply for a job with Chevron U.S.A. (*Id.* at ¶10). The e-mail response states, under a bolded section titled "External Applicants": "If you are interested in applying for employment at Chevron, please visit the Chevron Careers Website at htttp://careers.chevron.com Complete a profile and apply directly to jobs you are interested in." (*Id.*, Ex. 16, at p.1 (Automatic Chevron E-mail Response); *see also id.*, Ex. 14 at ¶10)). Every job requisition posted online on Chevron U.S.A.'s Career Center website includes a disclaimer at the bottom stating "If you are interested in this position, you must respond online. No phone, fax or e-mail inquiries from potential applicants, external recruiters or other interested parties, please." (*Id.*, Ex. 14 at ¶11; *see also id.*, Ex. 17, at p.10 (Chevron Website Screenshots)). Once a candidate applies to a specific job requisition through Chevron U.S.A.'s online Career Center, Chevron U.S.A.'s internal tracking system will list the job requisitions to which the candidate applied (and when) on the candidate's tracking summary. (*Id.*, Ex. 14 at ¶ 6)).

Chevron's summary-judgment evidence showed that Goswami completed only the first step of Chevron U.S.A.'s job-application process. (*Id*. at ¶12). On September 19, 2011, Goswami created a candidate profile and uploaded his resume through Chevron's Career Center website. (*Id*., Ex. 18 (Candidate Tracking Summary); *id.*, Ex. 19 (Goswami Candidate Profile); *id.*, Ex. 20 (Goswami Candidate Profile Screenshot)). But although he created a candidate profile, according to the company's records, Goswami did not apply to any specific job positions posted on Chevron U.S.A.'s website. (*Id.*, Ex. 14 at ¶13). Chevron U.S.A. asserts that had Goswami applied for a position online, Chevron U.S.A. would have a record of his application. (*Id*.). Goswami's candidate-tracking summary does not show any Chevron U.S.A. positions for which he applied. Instead, the records show that Goswami created a candidate profile on September 19, 2011, and a

9

former Chevron employee forwarded Goswami's resume to himself on November 9, 2011. (*Id.*; *see also* Ex. 18, Candidate Tracking Summary). Chevron U.S.A. has presented competent evidence that it does not have any other records of Goswami applying for any positions with Chevron U.S.A. in September 2011. (*Id.*, Ex. 14 (Connors Decl. ¶¶12-14)).

**2.     Discussion**

In analyzing discrimination claims under Title VII, the ADEA, and the ADA, courts in the Fifth Circuit apply the analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step requires the plaintiff to make a *prima facie* showing of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Rachid*, 376 F.3d at 312. In a failure to hire case, the plaintiff does this by showing that: (1) he is a member of a protected class; (2) he applied for a position for which the employer was seeking applicants; (3) he was qualified for the position; (4) he was not selected for the position; and (5) the employer continued to seek applicants for the position or filled the position by someone outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Henry v. Cont'l Airlines*, 415 F. App'x 537, 539 (5th Cir. 2011); *Chapman v. Dallas Morning News*, *L.P.*, No. 3:06-cv-2211-B, 2008 WL 2185389, at *6 (N.D. Tex. May 27, 2008). In ADA cases, the plaintiff must establish that he: (1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a nondisabled person or treated less favorably than nondisabled employees. *See Crawford v. U.S. Dep't of Homeland §.*, 245 F. App'x 369, 380 (5th Cir. 2007). If the plaintiff makes a *prima facie* showing of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802; *Rachid*, 376 F.3d at 312; *Chapman*, 2008 WL 2185389, at *6.

Goswami cannot show the second and third prongs of the *prima facie* case, that he applied and was qualified for any position with Chevron U.S.A.

Goswami did not follow the necessary steps to apply for a position with Chevron U.S.A. Chevron U.S.A.'s records demonstrate that Goswami completed only the first step in Chevron's job-application process — creating an online candidate profile — but did not apply for any position with Chevron U.S.A. through the online Career Center, the only way Chevron U.S.A. accepts job applications. Goswami did not identify competent evidence disputing Chevron U.S.A.'s evidence or raising a factual dispute as to whether he in fact applied to a specific position with Chevron U.S.A. Goswami's evidence includes a screenshot of his email account showing what appears to be a September 20, 2011 e-mail from Goswami to the "ccrjobs@chevron.com" e-mail account, as well as a job posting on the website of the Society of Exploration Geophysicists (SEG). (Docket Entry No. 19, at 4-6). The job posting on the SEG website was for a Seismic Processing Team Lead position with Chevron Canada Resources in Calgary, Alberta, Canada. (*Id*. at 4-5). By e-mailing his resume to "ccrjobs@chevron.com," Goswami e-mailed Chevron Canada Resources, a separate legal entity from Chevron U.S.A. (*Id*. at 4-6; Ex. 24 Oliver Decl. ¶¶ 3-4). These documents do not show that Goswami took the necessary steps to apply for a job with Chevron U.S.A. beyond the first step of creating a candidate profile on Chevron U.S.A.'s Career Center website.

Goswami cannot, as a matter of law, show a *prima facie* case of discrimination under Title VII, the ADEA, or the ADA. *See Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 312 (5th Cir. 2010) (the plaintiff's failure to apply for a position precluded his claim for discrimination in the failure to promote); *Grice v. EMC Techs. Inc.*, 216 F. App'x 401, 406 (5th Cir. 2007) (finding no

*prima facie* showing of a discriminatory failure to promote the plaintiff to a position he had not applied for).

        **D.**      **The Argument that Goswami Failed to Exhaust His Administrative Remedies on his Title VII, ADEA, and GINA Claims**

              **1.**      **The Summary-Judgment Evidence**

In his EEOC charge, Goswami asserted only claims under the ADA. He did not assert Title VII, ADEA, or GINA claims. Goswami marked only the box for "disability." (Docket Entry No. 27, Ex. 21 (Goswami EEOC Charge)). In the section of the charge asking for allegations, Goswami identified only the defendants' alleged discrimination "due to my disability." (*Id.*). Goswami did not mention in his EEOC charge purported discrimination based on his national origin (Title VII), age (ADEA), genetic information (GINA), or retaliation.

              **2.**      **Discussion**

An employee must exhaust administrative remedies before filing an action in federal court against an employer for violations of Title VII, the ADEA, and/or GINA. *See, e.g., Turner v. Novartis Pharms. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011) (Title VII); *Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 343 (5th Cir. 2008) (ADEA); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (Title VII); *Julian v. City of Houston*, 314 F.3d 721, 725 (5th Cir. 2002) (ADEA). Exhaustion occurs when an employee timely files a charge with the EEOC and receives a statutory notice of right to sue. *See Taylor*, 296 F.3d at 379; *see also* 42 U.S.C. § 2000e-5(e)(1) (Title VII charge filing requirement; 42 U.S.C. § 2000e-5(f)(1) (Title VII right to sue requirement); 29 U.S.C. § 626(d) (ADEA charge-filing requirement).

Assuming an employee timely files an EEOC charge and receives a right to sue notice from the EEOC, the employee may pursue only those claims that can "reasonably be expected to grow

out of the charge of discrimination." *See Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). An employee's failure to include a claim in his EEOC charge prevents the employee from suing on that claim, unless what was in the charge would have led the EEOC to investigate and would have put the employer on notice that Goswami would be pursuing that claim. Goswami failed to exhaust his administrative remedies as to these claims. Goswami cannot remedy his failure to exhaust his administrative remedies as to his Title VII, ADEA, and GINA claims by filing another charge of discrimination because it has been far more than 300 days since the alleged violations. *E.E.O.C. v. Rock-Tenn Servs. Co., Inc.*, 901 F. Supp. 2d 810, 822 (N.D. Tex. 2012) (noting that "Title VII requires that an employee file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory practice"); *see also* 42 U.S.C. § 2000e-5(e)(1).

**IV.     Conclusion**

Chevron has submitted extensive summary-judgment evidence showing that, as a matter of law, Goswami cannot recover on any of his claims. Goswami has failed, in his several replies, to point to summary judgment evidence that raises a factual dispute material to determining whether he has a claim supporting an inference that he can recover under the claims and statutes he invokes. Chevron is entitled to summary judgment dismissing all Goswami's claims. Final judgment is entered by separate order.

SIGNED on October 3, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge